## Metropolitan Life Ins. Co. v. Tye.

Dec. 19, 1941.

William Marshall Bullitt, Eugene B. Cochran and Bruce & Bullitt for appellant.

Guy L. Dickinson and Zeb A. Stewart for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Reversing.

On May 26, 1926, the Metropolitan Life Insurance Company, hereinafter referred to as the Company, is-

sued a policy for $1,000 on the life of Arthur Tye, in which his wife, Nora, was named as beneficiary. The semi-annual premiums of $16.46 were payable on May. 26th and Nov. 26th. At the time the policy was issued, Tye and his wife were living together and resided in Chicago. About one year thereafter they separated but were never divorced, and she subsequently returned to her home in Barbourville, Ky., where she was residing at the time of Arthur's death on April 4, 1938.

The policy gave the insured the right to change the beneficiary but this privilege was never exercised. The record shows Nora paid all of the first premium with the exception of $6, which was paid by her husband, and it appears that she paid all subsequent premiums and retained possession of the policy. There is a provision in the policy that after it had been in force for three years the Company would lend the owner (insured) or the assignee of record, if any, an amount not greater than the cash surrender value and accept the policy as sole security therefor.

It contained the further provision that after premiums for three full years have been paid, the owner or assignee, upon written request filed with the Company at its home office with the presentation of the policy for legal surrender within three months after the due date of any premium in default, shall be entitled to one of three options: (a) Cash surrender value; (b) paid-up whole life insurance; (c) paid-up term insurance. In the event the owner or assignees does not avail himself or one of the foregoing options within the three months specified, the Company would continue the policy as paid-up whole life insurance.

In 1932, Nora obtained from the Company a loan of $16.45 to pay a premium thereon. Again in 1935, she obtained a second loan sufficient to pay a premium and to repay the first loan. Officials of the Company testified these loans were made against Company rules and the terms of the policy, which provided that loans would be made only to the insured, or the assignee of record, but it made the loans to Nora only because the whereabouts of the insured were unknown. In July, 1937, Nora's request for a third loan was refused and the Company's agent informed her that her husband, who had been located, was objecting thereto.

On Dec. 1, 1937, she again applied to the Company

for a loan. Some correspondence passed between the Company and Arthur Tye, with which Nora was made familiar by the local agent of the Company. It appears that Arthur objected to this loan and informed the Company he desired to surrender the policy for its cash value. The policy had been forwarded to the Company with Nora's loan application dated Dec. 1, 1937. She registered an objection to her husband surrendering the policy and the Company returned the policy to her in February, 1938, and continued it as paid-up whole life insurance in the sum of $262, which was the amount of such insurance the cash surrender value would purchase after deducting the amount of the loan theretofore made.

After the insured's death on April 4, 1938, Nora as beneficiary brought this action to recover the face of the policy, $1,000, less the amount of the loan. The answer offered to confess judgment for $262 with $1.31 interest due thereon. The jury found for her in the sum of $1,000 less $37.98, and from the judgment entered on the verdict the Company appeals.

The Company argues that it was entitled to a peremptory instruction because: 1. Nora (a revocable beneficiary) obtain no vested interest in the policy by the payment of the premiums; 2. by making the 1932 and 1935 loans, the Company did not become estopped from refusing to make a loan in 1937; 3. the policy provided for paid-up whole life insurance upon the insured's failure to elect within three months after default of premium which of the three options he would exercise, and having failed to do so, the Company under the policy could continue the same for paid-up whole life insurance.

Appellee contends that the judgment should be affirmed on three grounds: 1. The Company could not forfeit the policy for non-payment of premium, since the cash surrender value was sufficient to pay the premium in default; 2. having made her two loans on the policy it was estopped to deny her the third loan; 3. Section 654, Kentucky Statutes, gave her a vested interest in the policy.

As the policy permitted the insured to change the beneficiary, Nora took no vested interest during the life of the insured but had only an expectancy in the policy. 37 C. J., Sections 345, 579; Twyman v. Twyman, 201 Ky. 102, 255 S. W. 1031; Hoskins v. Hoskins, 231 Ky. 5, 20

754

S. W. (2d) 1029; Colovos' Adm'r v. Gouvas, 269 Ky. 752, 108 S. W. (2d) 820, 113 A. L. R. 871. The fact that she paid the premiums, in the absence of an agreement to do so, gave her no vested interest in the policy, nor would it prevent the insured from assigning or surrendering same. 2 Couch on Insurance, Section 351, 1038; Cooper v. West, 173 Ky. 289, 190 S. W. 1085; Kash's Ex'r v. Kash, 260 Ky. 508, 86 S. W. (2d) 273; Wentworth v. Equitable Life Assurance Society, 65 Utah 581, 238 P. 648; Quist v. Western & Southern Life Ins. Co., 219 Mich. 406, 189 N. W. 49; Metropolitan Life Ins. Co. v. O'Donnell, 11 Del. Ch. 404, 102 A. 163.

Section 654 Kentucky Statutes, has no application to the policy before us. That section provides that a policy of life insurance made payable to any married woman shall inure to her separate use and benefit, and that of her children, independent of her husband's creditors. It further provides that a married woman may without the consent of her husband take out insurance on his life and pay the premium thereon, and such policy shall inure to her use and benefit, and that of her children, free from any creditors of her husband or others. Here the policy was not taken out by the wife and no question of her husband's creditors is involved, and Mutual Life Ins. Co. of New York v. Spohn, 170 Ky. 721, 186 S. W. 633, and Conn. v. White, 189 Ky. 185, 224 S. W. 764, cited by appellee, have no application.

Nora had no vested interest in the policy and had no right to borrow on it. The policy contract was that loans would be made the insured, or assignee, and it contained no agreement to make loans to the beneficiary. It is apparent the conditions under which it made the loans in 1932 and 1935 differed from those which existed when it refused the loan in 1937. Had the insured appeared in 1932 and 1935 and objected to those loans being made to the beneficiary as he did when she applied for the loan in 1937, it is obvious the Company would not have made them. Nor did the 1932 and 1935 loans estop the Company from refusing the loan in 1937. It is fundamental there can be no estoppel unless one party's conduct has misled the other to his prejudice or induced him to change his position for the worse. Owens v. Nat'l Life & Accident Ins. Co., 234 Ky. 788, 29 S. W. (2d) 557; Dalton v. Shelton, 267 Ky. 40, 101 S. W. (2d) 208; Wisdom's Adm'r v. Sims, 284 Ky. 258, 144 S. W.

(2d) 232. Here Nora could not have been misled because the Company refused her a loan in July, 1937, before she applied for a loan in December of that year. Nor was there a detrimental, or any, change on her part by reason of the Company having made her the prior loans.

It is insisted by appellee that as the policy had a cash surrender value far in excess of the premium due on Nov. 26, 1937, it was the Company's duty to apply a sufficient amount thereof to the satisfaction of the premium and not lapse the policy. She seeks to apply the rule enunciated in Cheek v. Com. Life Ins. Co., 277 Ky. 677, 126 S. W. (2d) 1084, and Com. Life Ins. Co. v. Gault's Adm'r, 256 Ky. 625, 76 S. W. (2d) 618, 620, and authorities therein cited:

> "If an insurer is indebted to an insured, and has, or should have, in its hands, sufficient funds belonging to and due him, to pay an assessment or a premium when due, it cannot forfeit its policy or certificate for non-payment; rather, it should appropriate such funds to prevent a forfeiture, no matter from what source such funds were derived."

But the cash surrender value of the policy was not a fund under the control or in possession of the Company which it could apply to the payment of the premium. Such fund was controlled by the provisions of the policy, which expressly directed how the Company could apply it. The Company was unauthorized by the policy to use the cash surrender value in the payment of the premium. Com. Life Ins. Co. v. Gault's Adm'r, 256 Ky. 625, 76 S. W. (2d) 618. It was not held in Cheek v. Com. Life Ins. Co., 277 Ky. 677, 126 S. W. (2d) 1084, that the surrender value of the policy is applicable to the payment of a premium in default, as appellee appears to think, but under the terms of the policy and the facts involved in that case, it was held that the Company should have applied the cash surrender value of the policy to the purchase of extended insurance.

The court should have directed a verdict in favor of the appellee for the amount tendered her in the answer of the Company; and should there be another trial and should the evidence be substantially the same as shown in this record, the court will so direct the jury.

The judgment is reversed.