## Farley et al. v. First National Bank.

(Decided June 23, 1933.)

COLEMAN & LANCASTER and E. P. PHILLIPS for appellants.
JOHN G. RYAN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

The Prudential Insurance Company of America issued an insurance policy on the life of O. B. Farley on May 24, 1926, which provided that at the death of the insured the proceeds should be paid to his beneficiaries in 60 monthly installments of $100 each. The beneficiaries named in the policy were his then wife, Maybell S. Farley, and his six children. The right to change the benficiary was reserved by the insured. The policy contained this provision:

> "If the right to change the Beneficiary has been reserved the Insured may at any time while this Policy is in force, by written notice to the Company at its Home Office, change the Beneficiary or Beneficiaries under this Policy, such change to be subject to the rights of any previous assignee and to become effective only when a provision to that effect is endorsed on or attached to the Policy by the Company, whereupon all rights of the former Beneficiary or Beneficiaries shall cease."

On August 7, 1930, by a rider attached to the policy, the beneficiaries were changed and the insured's estate was named the beneficiary. Maybell S. Farley died, or she and her husband were divorced; the record not being clear as to what happened to the marriage relationship. In either event, O. B. Farley married the appellant Mary B. Farley on November 20, 1930. This union proved to be an unhappy one, and the parties separated in February 1931, and divorce proceedings were instituted. The insured died on March 15, 1931, a suicide.

On Monday, March 16, 1931, the state agent of the Prudential Insurance Company received at his office in Louisville, Kentucky, the following letter:

"Murray, Kentucky, March 13th, 1931.

"Prudential Insurance Company of America,
   Newark, N. J.

"Gentlemen: Please change the beneficiary to policy No. 5440624, from my estate to my children, Oatman B. Farley, Jr., Joe Pat Farley, Mildred C. Farley, Bernice M. Farley, Austelle Farley and

Burnett Keys Farley, sons and daughters. The amount to be paid in Sixty monthly installments, share and share alike or to the survivors.

"Yours very truly,

"Oatman B. Farley."

The First National Bank of Murray qualified as guardian of the infant children of O. B. Farley, and on April 18, 1931, brought suit against the Prudential Insurance Company to recover on the policy. W. G. Miller, administrator of the estate of O. B. Farley, and Mary B. Farley, the widow, filed intervening pleadings in which they alleged that the attempted change of beneficiaries was in fraud of the rights of the insured's creditors and of the marital rights of the widow. The insurance company was permitted to pay into court the commuted value of the monthly installments payable under the policy, less the sum of $481.97 which had been borrowed on the policy by the insured before his death, and the action against the insurance company was dismissed. On the motion of the administrator and the widow, the case was transferred to the equity docket, and on final hearing the circuit court adjudged that the letter dated March 13, 1931, effected a change of beneficiaries and that the children named therein were entitled to the proceeds of the policy. The administrator and the widow have appealed.

The authenticity of the letter directing a change of beneficiaries is questioned, but the finding of the chancellor that it was signed and mailed by the insured is supported by the weight of the evidence. A few days before his death the insured consulted the local agent of the Prudential Insurance Company in regard to changing the benficiary named in the policy, and the agent prepared a letter to be signed and mailed to the company's state agent at Louisville, Ky. It was a copy of this letter signed by Oatman B. Farley that was received by the state agent at Louisville on the morning of March 16, 1931. The genuineness of the signature was attacked, but the weight of the evidence supports the appellee's claim that it was the genuine signature of Oatman B. Farley. The policy did not accompany the letter, and the change of beneficiary was never indorsed thereon, but it is well settled that, although the policy of insurance provides that the beneficiary cannot be changed except by the surrender of the policy, yet, if

the insured is unable to comply literally with the requirements, an attempted change will be recognized as a valid one, where it appears that the insured has done all that he could do to comply with the requirements. He will not be compelled to perform impossibilities. The provision requiring the return of the policy to the insurer and the indorsement thereon of the change of beneficiary is intended only for the benefit of the insurer, and may be waived by it; and, where all that remain to be done are merely ministerial acts of the officers and agents of the insurer, the change will take effect though the formal details were not completed before the death of the insured. Hoskins v. Hoskins, 231 Ky. 5, 20 S. W. (2d) 1029; Twyman v. Twyman, 201 Ky. 102, 255 S. W. 1031; Daugherty v. Daugherty, 152 Ky. 732, 154 S. W. 9; Vaughan's Administrator v. Modern Brotherhood of America, 149 Ky. 587, 149 S. W. 937; Manning v. Ancient Order of United Workmen, 86 Ky. 136, 5 S. W. 385, 9 Ky. Law Rep. 428, 9 Am. St. Rep. 270; and annotations in 36 A. L. R. 771.

A short time before his death O. B. Farley had delivered the policy in question to his brother, O. T. Farley, with directions to hold it in trust for O. B. Farley's children. On the day he wrote the letter to the insurance company directing a change of beneficiaries, he requested his brothr to return the policy to him, but his brother failed or refused to deliver it. Thus the insured's failure to return the policy to the insurer was caused by the refusal of the person having custody of it to surrender it to him, and, since his efforts in every other respect were in substantial compliance with the requirements of the policy, they should be given effect.

The chief ground relied upon by appellants for a reversal of the judgment is the claim that the change of beneficiaries was in fraud of the rights of the insured's creditors and of the marital rights of his wife. Under sections 654 and 655 of the Kentucky Statutes, only premiums on a life insurance policy paid by an insured in fraud of creditors on a policy in favor of his wife, or other persons, may be recovered as an asset of his estate. Smith's Administratrix v. Milton, 171 Ky. 819, 188 S. W. 877; Williams v. Harth, 156 Ky. 702, 161 S. W. 1102; Morehead's Adm'r v. Mayfield, 109 Ky. 51, 58 S. W. 473, 22 Ky. Law Rep. 580; Hise v. Hartford Life Insurance Company, 90 Ky. 101, 13 S. W. 367, 11 Ky. Law Rep. 924, 29 Am. St. Rep. 358.

Although O. B. Farley was insolvent when he died, it is not claimed that he was insolvent when any of the premiums on the policy were paid. The named beneficiary in a policy of insurance which provided for a change of beneficiaries has no vested interest during the life of the insured; his interest is a mere expectancy. A policy of life insurance having a cash surrender value is sometimes spoken of as property, but it has attributes different from other forms of property. Life insurance is chiefly for the purpose of creating an asset at the death of the insured for the benefit of his estate or of a named beneficiary. Where the right to change the beneficiary is reserved by the insured, this right is a part of the contract from its inception, and may be exercised by the insured at any time before his death, for not until then does the right of the named beneficiary become vested. It is a part of the contract from the time it is made, and when it has no value, that the insured may, without let or hindrance, change the beneficiary, and whether the beneficiary is his personal representative, a member of his family, or other person does not alter the character of the contract or limit his power to exercise the right reserved. The right of the insured to make the change is absolute unless equities have intervened, which is not the case here, and the beneficiary cannot prevent it by objecting. The insured may permit the policy to lapse, and no one can complain. It is an essential part of the contract that he retains control of the policy, at least, to the extent of changing the beneficiary. Whether the change shall be made is wholly under his control and the manner of making it is entirely a matter between him and the insurer. Hopkins v. Hopkins' Adm'r, 92 Ky. 324, 17 S. W. 864, 13 Ky. Law Rep. 707.

Appellant relies on the case of Gaines v. Gaines, 99 S. W. 600, 30 Ky. Law Rep. 710, in which it was held that a change of beneficiaries was made in fraud of the marital rights of the wife, but a reconsideration of the question convinces us that the rule there announced is unsound, and, in so far as the opinion in that case is in conflict with the views herein expressed, it is overruled.

The judgment is affirmed.

The whole court sitting.

Dietzman, Justice (dissenting).

I do not believe that the case of Gaines et al. v. Gaines, 99 S. W. 600, 30 Ky. Law Rep. 710, should be overruled. I think it is sound in principle and just in result. While it is true that the husband in the instant case as well as in the Gaines Case had the right to change the beneficiary of his insurance policy, that right certainly can rise no higher than his right to dispose absolutely of his personal estate, such as stocks and bonds and tangible personal property, during his life. But this right of the husband is met with the correlative right of the wife that the husband in exercising his rights of disposition as to property must not so exercise them as to perpetrate a fraud upon her marital rights. If he makes proper provision for his wife, then the husband may deal with his personal estate as he wishes, but, if he does not, he cannot, in the exercise of his right to deal with his personal estate as he wishes, so use that right as to strip her of her marital rights in his estate when he dies. Murray v. Murray, 90 Ky. 1, 13 S. W. 244, 11 Ky. Law Rep. 815, 8 L. R. A. 95; Payne v. Tatem et al., 236 Ky. 306, 33 S. W. (2d) 2. It is impossible for me to see how the right to change the beneficiary in a life policy stands on any better ground than the right to sell stocks and bonds or any tangible personal property the husband may own. His right to change the beneficiary may be exercised at his will, but, in the exercise of that right, he must not perpetrate a fraud upon his wife's marital rights. It may be argued that had the policy been made payable directly to the wife, he could have changed the beneficiary, and therefore, Why can he not do so when the policy is payable to his estate? The answer is obvious. Where the policy is payable to the wife, she takes whatever rights she may have to the proceeds of the policy under the terms of the policy, and one of those terms is the right to defeat her as beneficiary. But here her rights are not to the proceeds of the policy. Her rights are marital rights the statute gives her in the estate of her husband when he dies. The law throws around that right the correlative duty of the husband to deal with that estate so that the wife's right may not become an empty one. The curb is not upon the right to change the beneficiary as given him by the policy. The curb is on his dealing with his personal estate so as to defraud his wife in her marital rights. The distinction is clear and plain. The Gaines Case recognized it. The rule of the

Gaines Case obtains a wholesome public policy. It is a just rule and a fair one, and no good reason is advanced in the majority opinion for abandoning it.

For these reasons, I must dissent.