# Parks et al. v. Parks' Ex'rs.

Oct. 7, 1941.

Nelson D. Rodes and Henry Jackson for appellants.

Chenault Huguely, C. C. Bagby, and E. C. Newlin, Jr., for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER,
—Reversing.

The appeal is by the widow and a daughter of the late J. T. Parks from a judgment for the benefit of his creditors of an amount equal to the sum total of premiums paid in cash or by the use of cash surrender values of policies of insurance on his life. The amount, with simple interest from the dates of payment, is about $9,000. The judgment covers premiums paid during ten years next preceding the filing of an amended petition of the executors seeking such recovery in a suit to settle the decedent's estate. The sole contention of the appellants is that the judgment should have covered only five

years. It is rested upon the proposition that the right to recover is the converse of "a liability created by statute" and within Section 2515, Kentucky Statutes, which stipulates five years as the period of limitations for such an action where no other time is fixed by the statute creating the liability. The appellees contend the cause of action did not arise until the death of their testator; also that the action is for relief for fraud and within the terms of Section 2519, Kentucky Statutes, providing that no action for fraud can be maintained after the lapse of five years from the date of its discovery and in no event after the lapse of ten years from the perpetration of the fraud. The chancellor found the creditors had not discovered, actually or constructively, that their debtor was carrying insurance in which his wife and child were beneficiaries until his death.

Section 654 of the Statutes declares that a life insurance policy for the benefit of or payable to a married woman "shall inure to her separate use and benefit, and that of her children, independently of her husband or his creditors." However, this provision is added:

"But if the premium on any policy in this section mentioned is paid by any person with intent to defraud his creditors, an amount equal to the premium so paid, with interest thereon, shall inure to the benefit of said creditors, subject, however, to the statute of limitations."

Section 655 has the same provision of exemption of proceeds when the policy is in favor of some person other than himself who has an insurable interest in his life subject to this condition:

"Provided, That, subject to the statute of limitations, the amount of any premiums for said insurance paid in fraud of creditors, with interest thereon, shall inure to their benefit from the proceeds of the policy."

There are similar statutes in many of the states. Some of them, as in Massachusetts, New Jersey and Illinois are practically identical with the Kentucky statute. 2 Couch on Insurance, Section 330, et seq. The first enactment of this kind seems to have been in Massachusetts in 1844. Bailey v. Wood, 202 Mass. 549, 89 N. E. 147, 25 L. R. A., N. S., 722. Other states quickly followed with statutes modeled after it, for there was much

confusion and an irreconcilable conflict in the decisions as to the respective rights in the proceeds of a life insurance policy as between a man's family whom he had provided for and those whom he owed. The legislatures were influenced by the thought that a man's life is no part of his assets; that his wife and little children have moral and legal claims as much entitled to the law's respect and consideration as those of his creditors; that in making provision for the support of his family when his labors shall have ended, the only money he had diverted from his estate which might otherwise have been applied to the immediate payment of his debts is the amount of the premiums. This was another step in the progress away from the shocking practice of placing a man in jail for not paying his debts and casting his family into the street. This court observed years ago that a debtor had higher obligations upon him to support his sister and brothers of tender years and of a widowed, indigent mother than to provide for the wants of his creditors, however just their demands. Wade v. Lyman & Bronston, 7 Ky. Opin. 427; McMurray v. Shuck, 69 Ky. 111, 6 Bush. 111, 99 Am. Dec. 662. The right of creditors under Sections 654 and 655 of our Statutes becomes superior only where there was a fraudulent intent on the part of the insured to prefer his family at the expense of his creditors, and the right is limited to the amount diverted for that purpose. Townsend's Assignee v. Townsend, 127 Ky. 230, 105 S. W. 937, 16 L. R. A., N. S., 316; Bailey v. Wood, 202 Mass. 562, 89 N. E. 149. The Statutes are in the nature of an exemption law, which is always liberally construed for the benefit of a man's family. Wallins Nat. Bank v. Turner, 221 Ky. 562, 299 S. W. 194. Therefore, whatever may be the particular application or condition requiring its construction, the statute should be viewed with liberality for the widow and children. Cole v. Marple, 98 Ill. 58, 38 Am. Rep. 83; Harriman Nat. Bank v. Huiet, 249 F. 856, 859, applying the principle enunciated in Central Nat. Bank of Washington v. Hume, 128 U. S. 195, 9 S. Ct. 41, 32 L. Ed. 370; Penn Mutual Life Ins. Company v. Meguire, D. C., 13 F. Supp. 967. Thus, the weight of authority is that a husband may devote a moderate portion of his earnings to insuring his life in favor of his wife and make reasonable provision for her future without thereby being held to have intended to defraud his creditors, even though he was insolvent when he effected the insurance or paid

the premiums. Thompson v. Cundiff, 74 Ky. 567, 11 Bush 567; Goodpaster v. Connor & Kimbrough, 13 Ky. Law Rep. 138; Hise v. Hartford Life Ins. Company, 90 Ky. 101, 13 S. W. 367, 29 Am. St. Rep. 358; 2 Couch on Insurance, Section 330, p. 940; Note 31 A. L. R. 52; Cf., however, Morehead's Adm'r v. Mayfield, 109 Ky. 51, 58 S. W. 473; Levy's Adm'r v. Globe Bank & Trust Company, 143 Ky. 690, 137 S. W. 215.

The genesis of our current Statutes is an act entitled "An Act for the incorporation and regulation of life insurance companies," approved March 12, 1870. Acts of 1869-70, page 61. See Conn v. White, 189 Ky. 185, 224 S. W. 764. Section 30 of that Act is in substance and effect the same as Section 117 of an Act of 1893, which is Section 654 of the current Statutes, except that it was confined to policies of insurance originally taken out for the benefit of a married woman. Section 31 of the Act of 1870 related to the assignment or transfer of a policy as well as one "made payable to any married woman or to any person in trust for her or for her benefit." The provisions of that section, it will be noted, are also embraced in Section 654 of the Statutes, while Section 655 extends the exemption of proceeds from the payment of the insurer's debts to a policy "effected" in favor of any person having an insurable interest in his life. The difference in the condition of the two sections which permit recovery of premiums is that in Section 654 the premium must have been paid "with intent to defraud," while in Section 655 it must have been paid "in fraud"; and Section 654 simply says the payment shall inure to the benefit of the creditors, while Section 655 provides that the amount so paid shall inure to the benefit of the creditors "from the proceeds of the policy." The differences do not appear to be material.

The appellees submit that their cause of action accrued not when the premiums were paid but when the proceeds of the insurance became payable at the death of the insured, since there could not have been any recovery until then, and that the judgment may be affirmed upon this ground. At first impression it would seem the point is well made. But both analysis and authority compel a different ruling. The word "inure" in this connection is a prospective word, having the meaning of "to be or become operative; to serve to the use or benefit." Webster's New International Dictionary.

Significance must be given the specific condition that the right is subject to the statute of limitations. If nothing had been said the appropriate statute would have automatically applied to a cause of action arising when the proceeds were payable. It is an unusual declaration. The specification of the right being subject to the statute of limitations used in connection with the word ''inure,'' we apprehend, was intended to have limitations begin as of the date of the payment of the premium. As stated in Smith's Adm'x v. Milton, 171 Ky. 819, 188 S. W. 877, 878, ''the creditors have no claim on the proceeds of the policy as such. They can subject to their debts only the premiums paid thereon with intent to defraud creditors.'' The same point was made in Lanning v. Parker, 84 N. J. Eq. 429, 94 A. 64, 66. In reaching the conclusion that the obvious legislative intent was to fix a maximum sum which the proceeds of the policy could be made to yield, and that it was subject to being diminished by the supervening of the limitations contained in the act defining the liability, the court reasoned:

> ''True it is that the rights of creditors to recover the premiums does not arise until the death of the assured, but it does not follow as a legal sequence that the statute of limitations does not begin to run until the cause of action accrued, when by the very act which defines the right it is provided that upon the inchoate obligation of the beneficiary to account for the premiums, galvanized by the act into a legal duty, the statute is to operate. * * * The evident scheme of the Legislature was, and I entertain the notion that the restrictive terms in the proviso of the act were intended, to place a limit upon the amount the beneficiary was to pay for the exemption or immunity afforded her by the statute, gradually scaled down by the bar, and not in limitation of the right of action which was already assured her by the statute for the limitation of actions.''

The payment of the premium gives rise to a cause of action, though recovery thereof is postponed until the benefit is available from the proceeds. Hence, limitation runs from the date of payment of each premium.

The question is, what statute of limitations is referred to? Do these provisos which permit recovery of

premiums create a liability and consequent right of action, or do they but declare and limit a right that existed at common law or under general equity principles applicable to the relief for fraud? If the former, five years is the limitation; if the latter, ten. The answer, of course, is to be found by ascertaining what the pre-existing law was and how the difference is to be regarded. We have not hitherto been called upon for a decision as to what statute of limitations applies, and the two foreign opinions in which the question seems to have been considered are not of much help. In Cole v. Marple, 98 Ill. 58, 38 Am. Rep. 83, it was said that all premiums paid within five years next before the action was brought could be recovered under an identical statute, but the opinion does not disclose the particular statute of limitations applied or that there was any issue on the point. And in Lanning v. Parker, supra, six years before the commencement of the suit was held to be the period; but the kind of actions within New Jersey's six-year statute is not disclosed. The only classification of actions covered by the New Jersey six-year statute, 3 Comp. St. 1910, Section 1, page 3162, N. J. S. A. 2:24-1, under which the suit could have been put is as being one for debt or "of account" and "upon the case."

Looking to the common law construed and applied in Kentucky before the enactment of the predecessor of the current statute (Section 654 and 655) it will be found the same principle or criterion of liability was applied, namely, fraud was imputed where a man, hopelessly insolvent, made a most unreasonable provision for his wife and wholly disregarded the claims of his creditors. But the measurement of recovery was radically different. In Stokes & Sons v. Coffey, 71 Ky. 533, 8 Bush 533, the facts were, knowing that he was on the verge of bankruptcy, Coffey, a few months before his death, took out a policy of insurance payable to his wife for $10,000, and another for $5,000. At the same time he had a policy payable to his estate changed to one for' $5,000, payable to his wife; also he took out a $10,000 policy payable to his brother. It appearing that the premium for the $10,000 policy payable to his wife had been paid by her out of her own funds and that she had received nothing from her husband by reason thereof, the proceeds were held to be free from the claims of his creditors. There was no difficulty in concluding that

changing the beneficiary of the $5,000 policy constituted a voluntary gift or assignment of a portion of the husband's estate and, therefore, was void as to antecedent creditors. And since the $5,000 policy originally and lately taken out for the wife was purchased by Coffey with his own means he had thereby diverted the amount paid for it from his creditors, so it was held the entire proceeds of that policy were available for his debts; and also that so much of the proceeds of the policy which was made payable to Coffey's brother as exceeded the amount owing him was subject to the payment of the insured man's debt. The case was decided without regard for the Act of 1870. See, also, Thompson v. Cundiff, supra; Hise v. Hartford Life Ins. Company, supra. The statute took away the right of creditors to recover the *entire proceeds* of a policy if necessary to satisfy their claims. In substitution the statute created the right of creditors to recover the *amount of premiums paid.*

There are other considerations supporting the concept of a new right and liability. We conceive conditions which would authorize creditors immediately upon payment to proceed to recover premiums paid an insurance company because such payment constituted a fraudulent conveyance. This statute protects the insurance company and the beneficiary of the policy by forbidding that and postponing collection until the proceeds are payable. Without it there would be no protection. Furthermore, as stated in Doyle v. Sleeper, 31 Ky. 531, 1 Dana 531, the operation of the statute of 13 Elizabeth, relating to fraudulent conveyances, was never applied to a case, such as was there presented, where an insolvent father had paid for certain property and had the deeds made to his children. And it was held that whatever right the creditors had to recover this property it was under the common law and that the proceeds should be for the benefit of the father's antecedent creditors only. A recovery under Section 654 or 655 of the Statutes is for the benefit of all creditors. Williams v. Harth, 156 Ky. 702, 161 S. W. 1102. Thus there is another right created by the statute.

We have recognized that the liabilities and rights in such a case as this are not controlled by other statutes, namely, by either Sections 1906 and 1907, relating to fraudulent conveyances generally, or by Section 2128, requiring transfers of personal property between hus-

band and wife to be acknowledged and recorded in order to be valid against third persons. Smith's Adm'x v. Milton, 171 Ky. 819, 188 S. W. 877. A similar statute in Alabama has been held to be not declarative of any common law principle but to create a new right and to confer a special privilege. Friedman v. Fennell, 94 Ala. 570, 10 So. 649.

Finally, the plaintiffs do not rest their case upon the common law but expressly plead a right to recover under and by virtue of Section 654 of the Statutes.

We construe the provisions of Sections 654 and 655 of the Statutes which give a right of action for the recovery of premiums paid with an intent to defraud creditors as being within the terms of Section 2515 prescribing five years as the period of limitations for "an action upon a liability created by statute, when no other time is fixed by the statute creating the liability."

Wherefore the judgment is reversed.

Whole Court sitting.